

FILED
IN OPEN COURT

OCT — 2011

CLERK, U.S. DISTRICT COURT
ALEXANDRIA, VIRGINIA

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF VIRGINIA

ALEXANDRIA DIVISION



**UNDER SEAL**

| | |
|---|---|
| UNITED STATES OF AMERICA )<br><br>v. )<br><br>MOHAMAD ANAS HAITHAM SOUEID )<br>    a/k/a "Alex Soueid"<br>    a/k/a "Anas Alswaid"<br><br>        Defendant. ) | .CRIMINAL NO. 1:11cr494 |

Count 1 - 18 U.S.C. § 371:
Conspiracy to Act in the United States as an Agent of a
Foreign Government

Count 2 - 18 U.S.C. § 951:
Acting in the United States as an Agent of a Foreign
Government

Count 3 - 18 U.S.C. §§ 922(a)(6):
Material False Statement on a Firearms Purchase
Application

Count 4 - 18 U.S.C. § 924(a)(1)(A):
False Statement on a Firearms Purchase Application

Counts 5 and 6 – 18 U.S.C. § 1001:
False Statements

Forfeiture

## INDICTMENT

October 2011 Term – At Alexandria, Virginia

THE GRAND JURY CHARGES THAT:

### GENERAL ALLEGATIONS

At all times material to this indictment:

1.    The defendant, MOHAMAD ANAS HAITHAM SOUEID, a Syrian-born

naturalized citizen of the United States, was a resident of Leesburg, Virginia.  Defendant

SOUEID was acting as an agent of the Syrian *Mukhabarat*.

2.    The word *Mukhabarat* is an Arabic term for intelligence, as in intelligence agency. In Syria, the *Mukhabarat* refers to the intelligence agencies for the Government of Syria, including the Syrian Military Intelligence (*Shu'bat al-Mukhabarat al-'Askariyya)* and General Intelligence Directorate (*Idarat al-Mukhabarat al-Amma).*

3.    The Government of Syria was a foreign government. The President of the Government of Syria was Bashar al-Assad.

4.    At no time material to this Indictment was defendant SOUEID:

(a)    a duly accredited diplomatic or consular officer of a foreign government, recognized by the United States Department of State;

(b)    an officially and publicly acknowledged and sponsored official or representative of a foreign government; or,

(c)    an officially and publicly acknowledged and sponsored member of the staff of, or employee of, any such officer, official, or representative of a foreign government.

COUNT ONE

18 U.S.C. § 371

*Conspiracy to Act in the United States as An Agent of a Foreign Government*

THE GRAND JURY FURTHER CHARGES THAT:

A.    The Grand Jury realleges and incorporates by reference the General Allegations of this Indictment.

B.    From in or about March 2011 to the present, the exact dates being unknown to the grand jury, in the Eastern District of Virginia and elsewhere, defendant MOHAMAD ANAS HAITHAM SOUEID did unlawfully, knowingly and willfully conspire with others, known and unknown to the grand jury, to commit an offense against the United States, namely, to knowingly act in the United States as an agent of a foreign government, to wit, the Government of Syria, without prior notification to the Attorney General as required by law, in violation of Title 18, United States Code, Section 951.

Manner and Means of the Conspiracy

1.    It was part of the conspiracy that defendant SOUEID and others, known and unknown to the grand jury, would collect video and audio recordings of, and information regarding, persons in the United States and Syria who protested against the Government of Syria and President al-Assad, and provide those recordings and information to the Government of Syria, all at the direction and control of the Government of Syria and Syrian officials.

2.    It was further part of the conspiracy that defendant SOUEID and others would undermine, silence, intimidate, and potentially harm persons in the United States and Syria who

protested against the Government of Syria and President al-Assad, all at the direction and control of the Government of Syria and Syrian officials.

3.      It was further part of the conspiracy that defendant SOUEID used email accounts, the Internet, the telephone, and other forms of communication to communicate with conspirators and others located in the United States and Syria.

4.      It was further part of the conspiracy that defendant SOUEID recruited individuals living in the United States to collect information regarding protestors attending anti-Government of Syria and anti-President al-Assad protests in the United States (hereinafter "protests").

5.      It was further part of the conspiracy that defendant SOUEID instructed individuals living in the United States to make audio and video recordings of anti-Government of Syria and anti-President al-Assad protests in the United States.

6.      It was further part of the conspiracy that defendant SOUEID instructed individuals living in the United States to make audio and video recordings of conversations with individuals in the United States and Syria who protested against the Government of Syria and President al-Assad (hereinafter "protestors").

7.      It was further part of the conspiracy that defendant SOUEID instructed individuals living in the United States to provide defendant SOUEID with the audio and video recordings of the protests in the United States and conversations with protestors in the United States and Syria.

8.      It was further part of the conspiracy that defendant SOUEID emailed and provided audio and video recordings of protests in the United States and protestors in the United States and Syria to an individual working for the *Mukhabarat* (unindicted coconspirator; hereinafter "UCC-1"), and other conspirators in the Government of Syria.

4

9.     It was further part of the conspiracy that defendant SOUEID instructed individuals living in the United States to collect information regarding the protests in the United States and protestors in the United States and Syria.

10.     It was further part of the conspiracy that defendant SOUEID emailed, communicated and provided the information collected by individuals living in the United States regarding protestors in the United States and Syria to UCC-1 and other conspirators in the Government of Syria.

11.     It was further part of the conspiracy that defendant SOUEID, UCC-1, and other conspirators discussed harming protestors in the United States and Syria.

12.     It was further part of the conspiracy that defendant SOUEID received direction from and acted under the control of conspirators in the Government of Syria and Syrian officials, including UCC-1.

13.     It was further part of the conspiracy that defendant SOUEID, UCC-1, and other conspirators misrepresented, concealed, hid, and a caused to be misrepresented, concealed, and hidden, the purposes of and acts done in furtherance of the conspiracy, to avoid detection and apprehension by law enforcement authorities.

<u>Overt Acts</u>

In furtherance of the conspiracy, and to accomplish its unlawful objects, defendant SOUEID and his unindicted conspirators performed the following overt acts, and others, in the Eastern District of Virginia and elsewhere:

1.     From on or about April 2, 2011, until on or about June 10, 2011, defendant SOUEID emailed UCC-1 approximately twenty (20) audio and video recordings of anti-

5

Government of Syria and anti-President al-Assad protests and conversations with protestors in the United States.

2.      On or about April 6, 2011, defendant SOUEID emailed an individual who works at the Syrian Embassy in Washington, D.C. (hereinafter "Embassy") a link to a website for protestors in the United States.  Defendant SOUEID told the individual that "we're in his ring now, [v]ery important details I have for you."

3.      On or about April 17, 2011, defendant SOUEID sent UCC-1 an email discussing "product codes."  In the email were codes to be used when defendant SOUEID and UCC-1 referred to particular protestors in the United States.

4.      On or about April 18, 2011, UCC-1 emailed defendant SOUEID a link to a website where he could download a program to condense and transfer files.

5.      On or about April 19, 2011, defendant SOUEID emailed UCC-1 a coded message describing a meeting of protestors in the United States that was held in Alexandria, Virginia. Attached to the email was a link listing who was missing and dead in the April demonstrations in Syria against the Government of Syria.

6.      On or about April 19, 2011, defendant SOUEID emailed UCC-1 contact information, including phone numbers and email addresses, for protestors in the United States.

7.      On or about April 30, 2011, defendant SOUEID sent UCC-1 an email titled "what we talked about."  Attached to the email was a handwritten letter from defendant SOUEID addressed to UCC-1.  In the letter, defendant SOUEID stated that violence against protestors was justified, raiding homes of protestors was justified, and that any method should be used to deal with the protestors.

6

8.      On or about May 18, 2011, defendant SOUEID emailed UCC-1 that morale of other conspirators in the United States was low based on unfavorable news from Syria. Defendant SOUEID asked UCC-1 to write him something that he could forward to the other conspirators to cheer them up.

9.      On or about June 22, 2011, defendant SOUEID traveled from the United States to Syria. Defendant SOUEID's trip was pre-paid because he was traveling on behalf of the Government of Syria. In Syria, defendant SOUEID met with President al-Assad as part of a delegation, and spoke with President al-Assad in private. Defendant SOUEID also repeatedly met with UCC-1.

10.     On or about June 22, 2011, defendant SOUEID sent a Syrian government official working in the United States (hereinafter "Official") a message providing the Official with defendant SOUEID's private number and a phone number for UCC-1.

11.     On or about July 6, 2011, defendant SOUEID returned to the United States from Syria. Defendant SOUEID called his wife when he landed at Dulles International Airport in Herndon, Virginia (hereinafter "Dulles"). During the conversation, defendant SOUEID reproached his wife for talking to him on the *Mukhabarat* telephone.

12.     On or about July 7, 2011, defendant SOUEID spoke with UCC-1 in code. Defendant SOUEID told UCC-1 that he changed procedures due to being searched and questioned at Dulles when he returned from Syria. Referring to UCC-1 as his boss, defendant SOUEID asserted that the search and questioning at the airport would not stop the project.

13.     On or about July 9, 2011, defendant SOUEID sent UCC-1 a photograph of defendant SOUEID speaking with President al-Assad.

7

14.     On or about July 10, 2011, defendant SOUEID asked UCC-1 to send him money. UCC-1 responded that he would transfer money to defendant SOUEID, but it would not be the entire amount requested.

15.     On or about July 20, 2011, defendant SOUEID asked UCC-1 to tell the Official, who was in Syria at the time, that defendant SOUEID was following up on the protestors who had filed a lawsuit against the Official and others. Among other allegations, the lawsuit accused the Official and others of monitoring the activity of protestors, transmitting information about the protestors to Syria, and retaliating against the relatives and family members of the protestors.

16.     On or about July 26, 2011, defendant SOUEID spoke with a person living in the United States (hereinafter "Person 1") about an upcoming pro-Government of Syria rally. Defendant SOUEID and Person 1 also discussed postponing a trip by Syrians living in the United States to Syria to show their support for the Government of Syria. Defendant SOUEID gave Person 1 permission to call UCC-1 about the postponement of the Syria trip.

17.     On or about July 30, 2011, a second person living in the United States (hereinafter "Person 2") told defendant SOUEID that he videotaped protestors in Washington, D.C. Defendant SOUEID asked Person 2 for the raw footage of the video.

18.     On or about August 3, 2011, defendant SOUEID was interviewed by agents from the Federal Bureau of Investigation ("FBI"). Defendant SOUEID denied ever collecting any information on United States persons, or people living in the United States, and transmitting that information to the Government of Syria. Defendant SOUEID also denied directing anyone to audio or video record any conversations, meetings, rallies, or protests.

19.     On or about August 4, 2011, defendant SOUEID changed his long distance calling card.

20.     On or about August 4, 2011, in a coded conversation, defendant SOUEID asked UCC-1 to inform the *Mukhbarat* about his FBI interview.

(In violation of Title 18, United States Code, Section 371.)

COUNT TWO

18 U.S.C. § 951

*Acting in the United States as an Agent of a Foreign Government*

THE GRAND JURY FURTHER CHARGES THAT:

A.      The Grand Jury realleges and incorporates by reference the Manner and Means of the Conspiracy and Overt Acts of Count One and the General Allegations of this Indictment.

B.      From in or about March 2011 to the present, the exact dates being unknown to the grand jury, in the Eastern District of Virginia and elsewhere, defendant MOHAMAD ANAS HAITHAM SOUEID did unlawfully and knowingly, and without prior notification to the Attorney General of the United States as required by law, act in the United States as an agent of a foreign government, to wit, the Government of Syria.

(In violation of Title 18, United States Code, Section 951.)

10

COUNT THREE

18 U.S.C. §§ 922(a)(6)

*Material False Statement on a Firearms Purchase Application*

THE GRAND JURY FURTHER CHARGES THAT:

A.     The Grand Jury realleges and incorporates by reference the General Allegations of this Indictment.

B.     On or about July 11, 2011, within the Eastern District of Virginia, defendant MOHAMAD ANAS HAITHAM SOUEID, in connection with the acquisition of a Beretta, Model 96-A1, .40 caliber pistol bearing serial number A41380M purchased from Sharpshooters Small Arms Range Inc., in Lorton, Virginia, a licensed dealer of firearms within the meaning of Chapter 44, Title 18, United States Code, did unlawfully and knowingly make a false and fictitious written statement on a Department of Justice, Bureau of Alcohol, Tobacco, Firearms and Explosives Form 4473, Firearms Transaction Record, to wit, that the defendant's current residence address was 19852 Somercote Lane, Leesburg, Virginia 20175, said statement intended and likely to deceive Sharpshooters Small Arms Range Inc. as to a fact material to the lawfulness of such sale of the Beretta firearm to the defendant under Chapter 44 of Title 18, in that the defendant represented a false current residence address.

(In violation of Title 18, United States Code, Sections 922(a)(6).)

11

COUNT FOUR

18 U.S.C. § 924(a)(1)(A)

*False Statement on a Firearms Purchase Application*

THE GRAND JURY FURTHER CHARGES THAT:

A.    The Grand Jury realleges and incorporates by reference the General Allegations of this Indictment.

B.    On or about July 11, 2011, in the Eastern District of Virginia, defendant MOHAMAD ANAS HAITHAM SOUEID, in connection with the purchase of a Beretta, Model 96-A1, .40 caliber pistol bearing serial number A41380M, did unlawfully and knowingly make a false statement and representation to Sharpshooters Small Arms Range Inc, licensed under the provisions of Chapter 44 of Title 18, United States Code, with respect to information required by the provisions of Chapter 44 of Title 18, United States Code, to be kept in the records of Sharpshooters Small Arms Range Inc, in that the defendant provided a false current residence address to the licensed dealer.

(In violation of Title 18, United States Code, Section 924(a)(1)(A).)

COUNT FIVE

18 U.S.C. § 1001

*False Statements*

THE GRAND JURY FURTHER CHARGES THAT:

A.      The Grand Jury realleges and incorporates by reference the General Allegations of this Indictment.

B.      On or about August 3, 2011, in the Eastern District of Virginia, defendant MOHAMAD ANAS HAITHAM SOUEID did unlawfully, knowingly, and willfully make materially false, fictitious, and fraudulent statements in a matter within the jurisdiction of a department or agency of the United States by stating the following to Special Agents with the Federal Bureau of Investigation:

   i.   No, when asked: Are you aware of any individual specifically that is either taking photographs or videotaping people?

   ii.  No, when asked: Have you ever directed anyone to audio or videotape any conversation, meeting, rally, or protest?

   iii. Absolutely not, when asked: Sir, have you ever collected any information on United States persons, people living here in the United States, and transmitted that, that, information to a foreign government, maybe to Syria?

The statements were false because, as defendant SOUEID then and there knew:

   i.   That at least one other person was taking photographs and videotaping people;

   ii.  That defendant SOUEID had directed someone to audio or videotape a conversation, meeting, rally, or protest; and,

   iii. That defendant SOUEID had collected information on United States persons and transmitted that information to the government of Syria.

   (In violation of Title 18, United States Code, Section 1001.)

13

COUNT SIX

18 U.S.C. § 1001

*False Statements*

THE GRAND JURY FURTHER CHARGES THAT:

A.      The Grand Jury realleges and incorporates by reference the General Allegations of this Indictment.

B.      On or about August 3, 2011, in the Eastern District of Virginia, defendant MOHAMAD ANAS HAITHAM SOUEID did unlawfully, knowingly and willfully make materially false, fictitious, and fraudulent statements in a matter within the jurisdiction of a department or agency of the United States by stating the following to Special Agents with the Federal Bureau of Investigation:

  i.      No, when asked:  Have you ever been an agent of the Syrian government?

  ii.      Absolutely not, when asked:  Are you a foreign intelligence officer?

The statements were false because, as defendant SOUEID then and there knew:

  i.      He was actively working as an agent for the Syrian government; and,

  ii.      That he was a foreign intelligence officer.

  (In violation of Title 18, United States Code, Section 1001.)

14

## FORFEITURE

If convicted of the violations charged in Counts Three and Four of this Indictment, the

defendant shall forfeit to the United States all firearms and ammunition involved in or used in

such violations.  This property includes, but is not limited to:

a.      One Beretta, Model 96-A1, .40 caliber pistol; and

b.      Three boxes of .40 caliber ammunition.

(Pursuant to 18 U.S.C. § 924(d) and 28 U.S.C. § 2461(c).)

A TRUE BILL:

> s ut t. ... .c 'e-Government' A..t
> the original of this page has been fil.. .
> under seal in the Clerk's Office.

_____

**F O R E P E R S O N**

Neil H. MacBride
United States Attorney

By:   _Dennis M. Fitzpatrick_
      Dennis M. Fitzpatrick
      W. Neil Hammerstrom, Jr.
      Assistant United States Attorneys

      _Brandon L. Van Grack /by NH_
      Brandon L. Van Grack
      Trial Attorney
      National Security Division
      Department of Justice

15